# United States Court of Appeals
## For the First Circuit

No. 00-1604

MICHAEL CODY,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

Cheryl J. Sturm on brief for appellant.
William F. Sinnott, Assistant United States Attorney, and Donald K. Stern, United States Attorney, on brief for appellee.

May 11, 2001

**LYNCH, <u>Circuit Judge</u>**.  Michael Cody pled guilty in 1992 to conspiring to import and distribute over 1000 pounds of marijuana and to being a felon in possession of a firearm.  At his plea hearing, Cody told the court that he was on the drug lithium; the court inquired whether the drug affected his ability to think normally, and Cody twice answered that it did not.  After the plea hearing, Cody wrote the court several letters asking to withdraw his plea on the ground that lithium did in fact so influence his judgment at the time of his plea as to render the plea involuntary.  The letters also suggested, as a secondary matter, that his attorney had pressured him to plead guilty. The court ordered the case to conference to address the issues raised in the letters.  At the hearing, while Cody continued to be represented by the same lawyer, his attempt to withdraw his plea was heard and rejected, and the court proceeded to sentence him to 14 years in prison.  No appeal was taken.

As a result of his plea bargain Cody received the benefit of a sentence of about half the guideline range for his crimes.  Not content, in 1995 he persisted in trying to vacate the plea after sentencing by filing a petition under 28 U.S.C. § 2255.  After some procedural delays and mishaps not pertinent here, his petition was denied in February 2000.  Accompanying the denial was a certificate of

appealability, which we construe as raising two issues: first, whether Cody's plea was voluntary; second, whether his counsel was ineffective either in permitting the plea to go forward or in representing Cody in his attempt to have the plea withdrawn. We affirm the district court's denial of the § 2255 petition as to both issues.[1]

## I.

Cody was indicted in October 1990. The criminal conduct to which he eventually pled guilty involved a scheme by Cody and several codefendants to import and distribute approximately 20,000 pounds of marijuana from Colombia. The government had strong evidence that Cody was the organizing force behind the scheme: he supplied over $65,000 to purchase the ship to be used in importing the drugs and hired its crew members. Further, there was evidence that Cody gave one of the crew members (who, as it happened, was a cooperating witness) a semiautomatic handgun, instructing him in a taped conversation that if certain persons attempted to accompany the drugs on the return trip, they were to be shot and their bodies dumped overboard.

---

[1] Cody has also briefed the issue of whether prejudicial error occurred as a result of the trial court's failure to apprise him of his right to appeal. We consider this issue insofar as it relates to the voluntariness and ineffective assistance claims, see infra n.3. But otherwise, as an independent claim, it was not part of the certificate of appealability and hence is not properly before us.

On September 26, 1990, Cody was arrested. Given the quantity of drugs and presence of guns involved in the crimes charged, Cody faced a sentencing guidelines range of 295 to 353 months. Following a period of negotiation, he entered into a written plea bargain with the government. As part of the bargain, the government agreed to recommend that the court depart downward and sentence Cody to only fourteen years, based on the fact that Cody suffered from post-traumatic stress disorder as a result of having served in Vietnam.

Cody pled guilty on January 31, 1992. At the plea hearing, the court went through the usual Rule 11, Fed. R. Crim. P., litany and Cody assured the court that his plea was free and voluntary. The court subsequently asked Cody if he was taking any medications that would affect his ability to think normally. Cody responded, "I'm given the drug lithium, your Honor, but that doesn't affect my train of thought or anything." The court followed up, asking Cody if he felt as though he knew what he was doing at the hearing. Cody said that he did. After the court concluded that it was satisfied as to the voluntariness of Cody's plea, Cody's attorney approached the bench to point out that the plea agreement contemplated a downward departure for diminished capacity. Counsel stated that neither he nor Cody believed that this condition interfered with Cody's ability to understand the hearing, but he suggested that the court address the issue for the record. The

court then posed the question directly to Cody, who affirmed that the condition did not impede his judgment in any way.

In the months between Cody's guilty plea and his sentencing, Cody sent three letters to the trial court. In the first letter, he stated in effect that he wished to withdraw his guilty plea on the ground that at the time of his plea he was under the influence of drugs. He further accused his attorney of having pressured him into the plea and of ignoring his phone calls since the plea hearing.[2] In the next two letters, Cody made various complaints regarding his medical condition, to the effect that the lithium medication for his post-traumatic stress syndrome rendered him "incapable of functioning normally."

In June 1992, the trial court held a disposition hearing in which it first addressed the issues raised in Cody's letters. Cody's attorney expressed uncertainty as to whether Cody wished him to continue as his lawyer. The court asked Cody whether he wished to continue with the same counsel, and Cody answered that he did, both through counsel and directly to the court. Cody's attorney noted at

[2] Specifically, the letter stated: "The day I pleaded I told Your Honor I was under the influence of drugs. The only reason I said I understand [was] because I was told to by my attorney. Under all these conditions, I would like the plea I agreed to nullified, as I was not in condition to even understand it, and have asked my attorney to put a motion in numerous times to have the plea dropped, which he has not done. I want to go to trial to prove my innocence."

several points that he found himself in a difficult position, in two respects. First, he found it difficult to advocate in favor of withdrawing Cody's guilty plea given his belief that the plea agreement he had negotiated with the government had been hard-won and was in Cody's best interest. Second, Cody's counsel raised concerns about the ethical dilemma in which he found himself, in that he was hesitant to take a position that might be considered at odds with his prior representations to the court that Cody was competent to plead. Nonetheless, given that he was to continue as Cody's counsel, he presented (without endorsing) Cody's argument that the plea should be vacated pursuant to a court investigation on the effects of his lithium medication on his competence to plead. Later in the proceeding, Cody reaffirmed that he had "perfect faith" in his attorney and wished to continue as his client. Cody has never alleged that he was incompetent to make rational decisions during this second hearing.

The court denied Cody's motion to withdraw his plea, finding the grounds for the motion implausible in light of the court's long experience dealing with Cody and its specific recollection of the plea hearing. The court proceeded to sentence Cody to fourteen years' imprisonment, per the government's recommendation under the plea agreement.

Cody did not appeal. He returned to the courts three years later to file the § 2255 petition at issue here, this time represented

by new counsel.  The petition alleged, inter alia, that (1) Cody's guilty plea was entered involuntarily and in violation of this court's Rule 11 jurisprudence requiring an inquiry as to the effects of a defendant's medication on his capacity to plead; and (2) Cody's counsel had provided ineffective assistance by failing to stop or correct the Rule 11 hearing and by continuing to represent him during the plea withdrawal hearing despite an actual conflict of interest.

The petition was initially heard by a magistrate judge who recommended its denial. The district court judge (a different judge from the trial court judge) adopted the recommended decision.  Cody now appeals.

## II.

We begin by fixing the scope of our review.  Although the issue has not been addressed by the parties, Cody is procedurally barred from raising his claim that his plea was involuntary.  Cody never directly appealed the trial court's denial of his motion to withdraw his guilty plea, and he has failed to show cause for this default.  Without a showing of cause (and prejudice), "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998).[3]

---

[3]     Cody independently raises in his brief the issue of the trial court's failure to apprise him of the right to appeal his

Nonetheless, although the cause and prejudice standard precludes Cody's involuntary plea claim, it does not preclude his ineffective assistance claim. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) ("[T]he failure to bring a claim of ineffective assistance of counsel on direct appeal is not subject to the cause and prejudice standard."). Indeed, ordinarily a collateral proceeding is the preferable vehicle for an ineffective assistance claim. United States v. Ademaj, 170 F.3d 58, 64 (1st Cir. 1999). Thus, we entertain Cody's petition to the extent that it challenges his guilty plea on the ground that it resulted from ineffective assistance of counsel. On this issue, we review the trial court's legal conclusions de novo, while reviewing its findings of fact for clear error. See Familia-Consoro v. United States, 160 F.3d 761, 764-65 (1st Cir. 1998).

---

sentence. See Fed. R. Crim. P. 32(c)(5). Even were we to interpret this claim as an attempt to show cause for not appealing the denial of his motion to withdraw his guilty plea, the claim would fail. Rule 32(c)(5) violations are considered harmless unless the defendant actually lacked independent knowledge of his right to appeal. See United States v. Torres-Otero, 192 F.3d 12 (1st Cir. 1999). Cody has not made any affirmative claim that he lacked such knowledge, but instead claims only that "there is no evidence" he had such knowledge. Without an affirmative denial that he knew of his right to appeal, there is no basis to find prejudice as a result of the trial court's Rule 32(c) violation.

Cody's ineffective assistance claim has two prongs. He claims, first, that his counsel should not have permitted him to plead guilty, and second, that having done so his counsel labored under an actual conflict of interest in attempting to argue for a withdrawal of Cody's plea at the plea withdrawal hearing.

As to the first prong, in order to succeed, Cody must prove by a preponderance of the evidence that his counsel unreasonably erred in permitting him to plead guilty, and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Cody has not met this burden. The essence of his argument is that the trial court's Rule 11 inquiry was insufficient with respect to the effects of his medication on his competence to plead, and that his counsel erred by not stopping or correcting the proceeding accordingly.[4] But there was no error in the court's inquiry, and so no error by counsel in not objecting to the proceedings.

When a defendant in a Rule 11 hearing confirms that he is on medication, the district court has a duty to inquire into the defendant's capacity to enter a plea. Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999); United States v. Parra-Ibanez, 936 F.2d 588, 594 (1st Cir. 1991). The "better practice" is to

---

[4] Cody has never alleged that at the time of his plea hearing, his counsel independently had reason to know that his medication rendered him incompetent to plead.

identify the drug in question, how recently it has been taken and in what quantity, and the drug's purpose and effects. United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000).

Here, the trial court learned that the defendant was taking lithium as a medication and that he was on lithium that day (presumably in the prescribed dose); further, from counsel's reminder that Cody suffered from post-traumatic stress syndrome, the court could infer that the lithium was prescribed for that condition. Most importantly, the court specifically inquired whether Cody's medication affected his ability to make reasoned decisions; Cody unequivocally answered that lithium "doesn't affect my train of thought or anything."[5]

Thus, this case is not controlled by the case relied upon by Cody, Parra-Ibanez, supra, where, after learning that the defendant was on tranquilizers, the court failed to follow up with any question whatsoever about whether the defendant's medication affected his competence to plead. By contrast, here the court asked that question directly, twice, and twice received an affirmative response. While the court might have probed further into the purpose and effects of

---

[5] The court also was able to observe Cody's appearance and demeanor as he answered questions throughout the colloquy, and it saw nothing to undermine Cody's assurances. See Savinon-Acosta, 232 F.3d at 269 ("Courts have commonly relied on the defendant's own assurance . . . that the defendant's mind is clear. Further, the defendant's own performance in the course of a colloquy may confirm . . . his assurances." (citations omitted)).

-10-

lithium, it at least conducted the minimum inquiry required, and thus Cody's counsel did not unreasonably err by not choosing to halt the proceedings or to advise the court to pursue further inquiry.

We turn, then, to Cody's next claim -- namely, that he never had a fair chance to argue for a withdrawal of his plea because his attorney labored under an actual conflict of interest at the hearing where the issue was heard. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); see also United States v. Sanchez-Barreto, 93 F.3d 17, 20 (1st Cir. 1996) (plea withdrawal hearing is critical stage of criminal proceeding to which Sixth Amendment right to effective assistance of counsel attaches). In order to succeed on an actual conflict of interest theory, Cody must show that his counsel (1) could have pursued some plausible line of argument at the plea withdrawal hearing but (2) failed to do so due to a conflict with counsel's other interests or loyalties. Bucuvalas v. United States, 98 F.3d 652, 656 (1st Cir. 1996). Cody claims that his counsel labored under an actual conflict of interest at the plea withdrawal hearing in that he could not fully bring himself to argue that Cody's lithium medication rendered him incompetent to plead, for counsel did not wish to suggest that he had previously been ineffective in permitting the plea to go forward.[6]

---

[6] Besides claiming that his lithium medication rendered him incompetent to plead, Cody also claimed in his letters and at the plea withdrawal hearing that his counsel pressured him to plead by threatening to withdraw if Cody insisted on going to

-11-

Cody's conflict of interest claim fails because he has failed to show the plausibility of his claim that his lithium medication rendered him incompetent to plead; thus we need not even reach the second prong of the Bucavalas test. Cf. Bucavalas, 98 F.3d at 656-57 (rejecting actual conflict claim on the ground that allowing defendant to testify in his own defense would not have been a plausible alternative defense strategy).[7] Cody's counsel did, after all, articulate Cody's argument that his plea be withdrawn subsequent to clinical scrutiny of his allegations that lithium affected his

_____

trial. In United States v. Sanchez-Barreto, supra, we recognized an actual conflict of interest at a plea withdrawal hearing where the defendant alleged that his attorney had earlier pressured him to plead guilty in order to hide the attorney's lack of trial preparation. However, in arguing this appeal, Cody focuses on the lithium claim and makes only desultory mention of his prior allegations of being pressured by his attorney. He does not develop an argument that his attorney was ineffective in pressuring Cody to plead. Further, Cody has not requested an evidentiary hearing as to whether his attorney pressured him to plead. Thus, without deciding whether an attorney's threat to withdraw unless the defendant pleads guilty constitutes an ethical violation or could otherwise give rise to a conflict of interest as in Sanchez-Barreto, we consider Cody to have waived any conflict of interest claim he might have pursued on this basis. Cf. United States v. Rosario-Peralta, 199 F.3d 552, 563 n.4 (1st Cir. 1999) (issues raised in a perfunctory manner on appeal deemed waived).

[7] The first prong of the Bucavalas test acts as a check on the possibility of a defendant twisting a mere conflict of opinion as to what is in the client's best interests into a "conflict of interest" between client and attorney.

-12-

competence to plead; the court rejected the argument. Cody suggests that more competent counsel would have previously investigated those allegations and forcefully presented them to the court. But he offers no proof that such investigation would have yielded the fruit of a plausible argument. Specifically, he offers neither proof that a prescribed dose of lithium has the potential to render one incompetent to plead nor proof that he was suffering such effect at the time of his plea hearing.

Cody argues that he has not had adequate opportunity to present such proof due to the district court's refusal to afford him an evidentiary hearing. But "[w]hen a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Cody had, by the time he filed his petition, ample opportunity to collect evidence to establish such need: e.g., documentary evidence from medical reference books describing the relevant effects of lithium, or an affidavit from his doctor or himself discussing the history of his lithium treatment. Because he has presented no such evidence along with his petition, he has no basis to demand an evidentiary hearing and, likewise, no basis to establish the plausibility of the argument he claims his counsel should have more forcefully made.

The judgment of the district court dismissing the § 2255 petition is affirmed.