[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 00-2118

RICHARD J. DECATO, JR.,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.

Richard DeCato on memorandum pro se.

November 27, 2002

**Per Curiam**.  Petitioner Richard J. DeCato Jr. has applied for a certificate of appealability (COA) in order to appeal from the dismissal of his habeas petition under 28 U.S.C. § 2255.  To qualify for a COA, he must make "a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).  This standard requires a demonstration that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (internal quotation marks omitted)).  Having scrutinized petitioner's submissions and the relevant parts of the record, we conclude that this standard has not been met.

Pursuant to a written plea agreement, petitioner pled guilty in 1994 to one count of engaging in a continuing criminal enterprise (CCE), 21 U.S.C. § 848, and to seventeen related charges.  He was sentenced in 1995 to a prison term of 308 months.  Petitioner pursued no direct appeal.  In May 2000, he filed the instant § 2255 petition, setting forth six claims that mainly complained of ineffective assistance on the part of counsel.  In a margin order, the district court summarily denied the petition as untimely.  See 28 U.S.C. § 2255 ¶ 6 (prescribing one-year limitations period); see also Rogers v. United States, 180 F.3d 349, 353-55 (1st Cir. 1999) (adopting one-year grace period

commencing on AEDPA's effective date of April 24, 1996), cert. denied, 528 U.S. 1126 (2000). The court thereafter denied a COA.

It is possible that at least one of petitioner's claims--that relying on Richardson v. United States, 526 U.S. 813 (1999)--was timely filed. See, e.g., United States v. Lopez, 248 F.3d 427, 430-32 (5th Cir.) (applying Richardson retroactively to case on collateral review pursuant to § 2255 ¶ 6(3)), cert. denied, 122 S. Ct. 222 (2001). It is also at least arguable that a timely Richardson claim would mean that the entire petition was timely. Rather than delve into the knotty issues surrounding application of the limitations period here, we prefer to dispose of the claims on the merits. We conclude that, regardless of the correctness of the district court's procedural ruling, petitioner has failed to demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack, 529 U.S. at 484.

**First.** Petitioner's first claim, which relies on Roe v. Flores-Ortega, 528 U.S. 470 (2000), complains of counsel's failure to file a direct appeal. Even on the arguendo assumption that Flores can be invoked here, this claim falls short. Petitioner acknowledges in his affidavit that he and counsel discussed the possibility of appealing on at least three occasions following imposition of sentence. At no point does petitioner suggest, much less aver, that he gave counsel "specific instructions" to file a

3

notice of appeal.  Id. at 477.  His complaint instead amounts to a disagreement with counsel's advice, which does not constitute a Flores violation.  In turn, even if the discussions with counsel fell short of a "consult[ation]" as the Court defined that term, see id. at 478--a matter we do not decide--we think it clear for three reasons that no constitutional violation would have obtained.  First, the conviction here followed a guilty plea, which the Court deemed a "highly relevant factor."  Id. at 480.  Second, although calculated in different fashion, the sentence imposed was virtually identical to that contemplated by the plea agreement.  See id. (describing as pertinent "whether the defendant received the sentence bargained for as part of the plea").  And third, a review of petitioner's other assignments of error suggests they would have had negligible prospect of success.  Under these circumstances, Flores imposed no obligation on counsel to do more than he did.

**Second.**  Petitioner next asserts that he was entitled to some sentencing reduction to reflect his cooperation with the government.[1]  Yet as he acknowledges, an anticipated motion for downward departure under U.S.S.G. § 5K1.1 was not pursued because he refused to testify at the trial of his codefendants--something the plea agreement obligated him to do.  And as he now concedes,

---

[1]  As with his other sentencing challenges, this argument, to the extent advanced as a substantive claim independent of any ineffective-assistance charge, would not be cognizable on collateral review.  See, e.g., Knight v. United States, 37 F.3d 769, 771-74 (1st Cir. 1994).

his earlier reliance on § 5K2.0 was misplaced. See, e.g., United States v. Alegria, 192 F.3d 179, 189 (1st Cir. 1999).

**Third.** Petitioner also complains that he failed to receive an additional two-point reduction in his offense level as contemplated by the plea agreement. That stipulation concerned a deduction "for time served as a result of the federal prosecution in the District of Maine, to conform with the intent [of U.S.S.G.] § 5G1.3." The presentence report (PSR) understandably voiced confusion about this provision, inasmuch as § 5G1.3 provides a mechanism for addressing a "prior unexpired term of imprisonment" and the Maine prison term had already expired. Regardless, the PSR compensated under § 5G1.3 by affording petitioner full credit for time served on an unexpired term of imprisonment in New Hampshire--a proposal not included in the plea agreement. The ensuing sentence (308 months, commencing in mid-December 1995) was virtually identical to that recommended by the plea agreement (324 months, commencing in late July 1994). Petitioner's assertion that he should have received both the plea agreement's two-level reduction and the PSR's sixteen-month credit ignores the fact that those two calculations were alternative means of implementing § 5G1.3.

**Fourth.** Petitioner also objects to his sentencing enhancement for obstruction of justice. Under the 1989 version of U.S.S.G. § 3C1.1, a two-level increase was warranted if petitioner "willfully impeded or obstructed ... the administration of justice during the

5

investigation or prosecution of the instant offense."  The plea agreement recommended such an enhancement, as did the PSR, which noted that petitioner had been "a fugitive from justice from the New Hampshire courts since 1982."  Petitioner does not dispute that his fugitive status obstructed justice in the state prosecution. Yet he argues that, because the federal investigation allegedly did not commence until after his recapture in 1990, he engaged in no obstructive behavior "during the investigation or prosecution of the instant offense."

Given the close connection between the state and federal offenses, this contention likely fails for the reasons recited in United States v. Emery, 991 F.2d 907, 910-12 (1st Cir. 1993). Regardless, even if the § 3C1.1 enhancement were open to challenge, petitioner has not made out a claim of ineffective assistance.  His complaint is that counsel should have objected to that enhancement at sentencing or on appeal.  Yet such a course likely would have nullified the plea agreement and thereby raised the prospect of a longer sentence.  We recently rejected an ineffective-assistance claim under analogous circumstances.  See Cofske v. United States, 290 F.3d 437, 443-45 (1st Cir. 2002).

**Fifth**.  Petitioner's next challenge is to the use of the 1989 version of the sentencing guidelines.  Because that version increased the penalties for tax violations, and because petitioner's tax offenses were completed before that amendment took

6

effect, he argues that the Ex Post Facto Clause required use of the 1988 version of the guidelines. This contention, however, overlooks the policy statement in U.S.S.G. § 1B1.11(b)(3) and accompanying commentary, which supports the choice of guidelines made here. See also United States v. Regan, 989 F.2d 44, 48-49 (1st Cir. 1993). Moreover, petitioner's claim of prejudice rests on the questionable premise that the remedy for any ex post facto violation would be to apply the 1988 guidelines, not just to his tax offenses, but to all counts of conviction. See, e.g., United States v. Sullivan, 255 F.3d 1256, 1263 (10th Cir. 2001) (rejecting similar argument on ground that it would produce "anomal[ous]" result whereby commission of additional crimes resulted in lower overall sentence), cert. denied, 534 U.S. 1166 (2002). We also note that the plea agreement endorsed use of a post-1988 version of the guidelines. Again, therefore, any challenge along these lines might have nullified the agreement and threatened an increased sentence. Counsel cannot be faulted for eschewing such a course.

**Sixth**. Petitioner's final claim relies on Richardson, in which the Court held that the jury must unanimously agree which specific drug violations make up the "continuing series" for a CCE conviction. In a two-pronged argument, petitioner alleges that, because he was not informed of this requirement, (1) his guilty plea was not knowing, intelligent and voluntary, and (2) his counsel rendered ineffective assistance. The first part of this

claim, not having been raised on direct appeal, is procedurally defaulted. See, e.g., Cody v. United States, 249 F.3d 47, 51-52 (1st Cir. 2001). It thus may be pursued on collateral review only if petitioner can demonstrate either "cause" and "prejudice" or "actual innocence." See, e.g., Bousley v. United States, 523 U.S. 614, 622 (1998). Petitioner has made none of these showings.

As explained in United States v. Scott, 218 F.3d 835, 837-39 (8th Cir.), cert. denied, 531 U.S. 1000 (2000), the unanimity question was not sufficiently novel at the time of petitioner's conviction so as to provide cause for the failure to raise it; indeed, petitioner himself acknowledges that one circuit court had held in 1988 that unanimity was required in this context. In turn, just as in United States v. Lopez, 248 F.3d 427, 433 (5th Cir.), cert. denied, 122 S. Ct. 222 (2001), we find no prejudice (or actual innocence). Petitioner did not object to the PSR, which contained a detailed account of his drug activity over the course of more than a decade.[2] And he admitted in the plea agreement that $3 million in cash and thirteen separate properties were subject to forfeiture as a result of such activity. Against this backdrop, we think it inconceivable that a jury would have failed to agree

---

[2] To cite just three examples: petitioner distributed over fifty kilograms of cocaine and thousands of pounds of marijuana during the 1980s and netted over $3 million from such sales (PSR ¶¶ 9 & 10); he visited his customer base on a weekly or bi-weekly basis (¶ 28); and one customer purchased a kilogram of cocaine per month from him for several years (¶ 30).

unanimously upon three CCE predicates (or that petitioner could reasonably have so thought at the time of his plea). Petitioner's only attempts at a rebuttal--that his drug sales were unrelated events and that he played no supervisory role--are belied by the record. This lack of prejudice, in turn, also suffices to dispose of the ineffective-assistance component of the <u>Richardson</u> claim. <u>Accord</u>, <u>e.g.</u>, <u>Scott</u>, 218 F.3d at 238.

For these reasons, the application for a COA is <u>denied</u> and the appeal is <u>terminated</u>.