*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0322P (6th Cir.)
File Name: 04a0322p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

MICHELE SILVERNAIL and
SARAH L. PAQUIN-DODGE,
  *Plaintiffs-Appellants,*

v.

COUNTY OF KENT; KENT
COUNTY SHERIFF'S OFFICE;
KENT COUNTY SHERIFF'S
DEPARTMENT; LAWRENCE A.
STELMA; JAMES R. DOUGAN;
CHECK ENFORCEMENT UNIT,
INC.; TERRY HEISS; and
DIANE CAYO,
  *Defendants-Appellees.*

No. 03-1413

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00559—Gordon J. Quist, District Judge.

Argued: June 18, 2004

Decided and Filed: September 22, 2004

Before: NORRIS, COLE, and ROGERS, Circuit Judges.

─────────────

─────────────

## COUNSEL

**ARGUED:** O. Randolph Bragg, HORWITZ, HORWITZ & ASSOC., Chicago, Illinois, for Appellants. Timothy E. Eagle, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** O. Randolph Bragg, HORWITZ, HORWITZ & ASSOC., Chicago, Illinois, for Appellants. Timothy E. Eagle, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellees.

ROGERS, J., delivered the opinion of the court, in which NORRIS, J., joined. COLE, J. (pp. 8-14), delivered a separate dissenting opinion.

─────────────

## OPINION

─────────────

ROGERS, Circuit Judge. Michele Silvernail and Sarah Paquin-Dodge appeal the district court's dismissal of their complaint alleging that the bad check collection scheme utilized by Kent County ("the County") violated their due process rights under the United States and Michigan Constitutions. Because the challenged process was constitutionally sufficient, we affirm the judgment of the district court.

Plaintiffs wrote bad checks to merchants in Kent County. Under municipal ordinances, a $25 fee is assessed for the passing of bad checks.[1] The County contracts with Check

─────────────

[1] The complaint alleges that "Kent County and/or various townships located therein" have enacted ordinances assessing a twenty-five dollar fee for dishonored checks. It does not appear that Kent County itself has such an ordinance, but townships within Kent County do have such

Enforcement Unit, Inc. ("CEU") to process dishonored checks and collect the fee. As the district court explained:

> CEU's sole business activity is the collection through its Check Operational Procedure of dishonored checks received by area merchants. CEU provides its services through contractual arrangements with various municipalities throughout the state of Michigan. Although CEU provides its services to merchants, it does so in collaboration with the municipalities' law enforcement agencies. Merchants enroll in CEU's Check Operational Procedure by paying CEU an $85 registration fee. When a check received by a participating merchant is dishonored, the check is forwarded to CEU by the merchant's bank or financial institution. After CEU receives the dishonored check, it sends out a series of notices and letters to the check writer printed on the letterhead of the municipality's law enforcement agency. These notices and letters demand payment of the check amount, bank fees, and a fee payable to the municipality. The County and CEU entered into a contract, pursuant to which CEU agreed to provide services to the County for the processing and recovery of bad checks and the investigation of bad check violations under local township bad check ordinances that were based on Michigan statutes making

---

ordinances. *See* Grand Rapids Charter Township, Michigan, Ordinance No. 348 (May 6, 1997) (prohibiting the drawing of checks without sufficient funds or on closed accounts and specifying penalties); Grand Rapids Charter Township, Michigan, Ordinance No. 349 (May 6, 1997) (providing for the collection of expenses relating to the handling and enforcement of dishonored checks); Grand Rapids Charter Township, Michigan, A Resolution to Set the Cost Recovery Fees for Enforcement of Dishonored Checks Ordinance (May 6, 1997) (authorizing County of Kent to collect as its agent $3.50 per dishonored check for costs and setting contractual fee of $21.50 per dishonored check for any check enforcement unit).

it unlawful to intentionally write checks drawn on accounts with insufficient funds.

*Silvernail v. County of Kent*, No. 1:02-CV-559, 2003 WL 1869206, at *1 (W.D. Mich. Feb. 24, 2003). After receiving a dishonored check, CEU issues a "Due Process Notice" to the check writer, which demands separate payments by cashier's check or money order for the amount of the dishonored check and bank fees (payable to the merchant) and for the $25 government assessment fee (payable to the County). The notice states that:

> Violations of the check laws are administered for the Police/Sheriff Department by the Check Enforcement Unit, Inc. Repayment of the check(s) plus the bank fee and government assessment fee is required. Should you have any questions regarding this letter or the amount due, please feel free to call [phone number] . . . .

The notice also cautions that "FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST."

Plaintiffs received this notice from CEU and each paid the government assessment fee of $25. They subsequently filed the instant action in the Western District of Michigan, alleging that the County and CEU violated their due process rights under the Fourteenth Amendment to the United States Constitution and the Due Process Clause of the Michigan Constitution, because the County's bad check collection scheme deprived them of their property—the $25 assessment fee— without adequate notice or an opportunity to be heard.[2] The defendants filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that plaintiffs had failed to allege a

---

[2] Plaintiffs filed a motion for class certification, but the district court dismissed the action without ruling on the motion.

due process violation, because they had failed to show a deprivation of property and alternatively because the process supplied was adequate. Accordingly, the district court granted the motion and dismissed the case. Plaintiffs appeal.

The district court properly dismissed plaintiffs' complaint because the complaint failed to state a claim upon which relief could be granted.[3] To state a claim for a violation of procedural due process under 42 U.S.C. § 1983, plaintiffs must show that they were deprived of a liberty or property interest, *see Bd. of Regents v. Roth*, 408 U.S. 564 (1972), and that the procedures afforded to protect that interest were insufficient under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). The district court ruled that plaintiffs lacked a protected interest because they voluntarily paid the $25 fee. *Silvernail*, 2003 WL 1869206 at *4-*5. We need not decide whether the district court was correct on that point, because plaintiffs received sufficient process even if we assume that they were deprived of their property.

The essential elements of due process are notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). Due process is a flexible concept, and the process required is context specific. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). In determining what process is due under *Eldridge, supra*, the court must consider the nature of the private interest, the risk of an erroneous deprivation under the procedures in place and the value of any additional procedural safeguards, and the

---

[3]This court reviews de novo the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). *Powell v. Jacor Communications Corp.*, 320 F.3d 599, 601 (6th Cir. 2003). In conducting its review, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 601-02 (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

government's interest—including the administrative burdens additional safeguards would impose.

Although the due process notices issued by CEU did not inform the check writers of the availability of a hearing or the procedure for requesting one, the district court nevertheless concluded that the notices satisfied the requirements of due process because they "were reasonably calculated to inform the Plaintiffs of the allegations against them and provided a means for responding to the allegations." *Silvernail*, 2003 WL 1869206 at *5. The district court noted that the private interest at stake—the $25 assessment fee—was minimal. With respect to the value of additional procedures, the district court stated:

> [T]here is no indication that additional procedural safeguards would reduce the risk of an erroneous deprivation of Plaintiffs['] money. As indicated in the Due Process Notice, the proof of a bad check violation is the returned check itself. Plaintiffs had notice of the returned check and were provided with a telephone number to call if their checks were stolen, if their accounts had been garnished, or if there was any other reason why they should not be required to pay the Government Assessment Fee. Plaintiffs did not attempt to call the telephone number, and they have not suggested that additional safeguards would reduce the likelihood of an erroneous deprivation. Moreover, as the County Defendants note, if Plaintiffs had failed to pay the Government Assessment Fee, the County Defendants could not have deprived Plaintiffs of their property unless they made a determination to file a criminal complaint, in which case Plaintiffs would have been entitled to a full trial.

*Silvernail*, 2003 WL 1869206 at *6. Finally, the district court recognized that the County had a significant interest "in resolving bad check complaints outside of the criminal system, thereby reducing administrative costs associated with

such violations and avoid unnecessary criminal or civil proceedings." Requiring the County to implement additional procedures, such as a full hearing for each bad check passed in the county, would impose significant costs and administrative burdens without any accompanying benefit. *Id.*

We concur in the reasoning of the district court. Rather than institute burdensome criminal procedures for each bad check passed, the County has implemented a system which permits check writers to take corrective actions without criminal sanctions. Plaintiffs have not alleged that erroneous assessments of the $25 fee were not correctable by the procedures provided—a telephone call to CEU. In any event, had plaintiffs failed to pay the assessment fee, they would have been entitled to the full panoply of due process protections when and if the County instituted a criminal action to collect the fee. Accordingly, under the balancing of the interests required by *Eldridge*, the process provided by the County's bad check collection scheme is constitutionally sufficient.[4]  The judgment of the district court is AFFIRMED.

---

[4] The court's holding also disposes of plaintiffs' due process claim under the Michigan Constitution, as the Michigan Constitution affords no greater protection than does the United States Constitution. *See Williams v. Hofley Mfg. Co.,* 424 N.W.2d 278 (Mich. 1988) (applying federal cases to, and analyzing together, claims made under the Michigan and federal due process clauses).

---

## DISSENT

---

R. GUY COLE, JR., Circuit Judge, dissenting. I disagree with the majority's conclusion that this case should be dismissed pursuant to Rule 12(b)(6). The majority's opinion misreads the statutory scheme – which, if read correctly, illustrates that the letter sent to the plaintiffs was misleading, and that paying the fee was in no way an alternative to criminal prosecution.

The majority asserts both that the plaintiffs could have been heard through the criminal justice system if they had refused to pay the fee, *Maj. Op. at 7* (stating that "had plaintiffs failed to pay the assessment fee, they would have been entitled to the full panoply of due process protections when and if the County instituted a criminal action to collect the fee"), and that, as a corollary, "the County has implemented a system which permits check writers to take corrective action without criminal sanctions." *Maj. Op. at 7.* The majority is wrong to view the collection process as an alternative to the criminal process. Although CEU's letter suggests that this is the case, the relevant Michigan statute and the Grand Rapids Ordinances mentioned by the majority say otherwise.

The Michigan Penal Code criminalizes uttering bad checks with the intent to defraud. M.C.L.A. § 750.131. Bad checks uttered for less than $100 are punishable by up to 93 days in jail and a fine not to exceed $500. M.C.L.A. § 750.131(3)(a)(i). The punishment for larger checks and subsequent offense ranges considerably higher. M.C.L.A. § 750.131(3)(a)(ii)-(c).

Aside from this criminal scheme, Michigan law provides a specific civil cause of action to payees who have received bad checks. M.C.L.A. § 600.2952. This cause of action is "[i]n addition to applicable penal sanctions." M.C.L.A.

§ 600.2952(1). It makes a bad check writer liable for the amount of the check, plus a $25 processing fee, civil damages, and costs. *Id.* Unlike the criminal statute, this civil statute does not have an intent requirement. The statute further authorizes the payee or an agent of the payee to send a demand for payment of the check and the processing fee. M.C.L.A. § 600.2952(2).

Indeed, M.C.L.A. § 600.2952 provides the "text of the written demand," and this text differs significantly from the letter sent by CEU. The text in the statute makes it crystal clear that repaying the check and paying the processing fee will settle civil liability:

'A check, draft, or order for payment of money drawn by you for $_____ was returned to me/us/our client (client's name) dishonored for:

[ ] Insufficient funds
[ ] No account

This notice is a formal demand for payment of the full amount of the dishonored check, draft, or order plus a processing fee of $25.00 for a total amount of $_____. [I]f you pay this total amount within 7 days, excluding weekends and holidays, after the date this notice was mailed, no further civil action will be taken against you.

If you do not pay the $_____ as requested above, but within 30 days after the date this notice was mailed you pay the amount of the dishonored check, draft, or order plus a $35.00 processing fee, for a total amount of $_____, no further civil action will be taken against you.

If you fail to pay either amount indicated above, I/we/our client will be authorized by state law to bring a civil action against you to determine your legal responsibility

for payment of the check, draft, or order and civil damages and costs allowed by law.

If you dispute the dishonoring of this check, draft, or order, you should also contact your bank or financial institution immediately.'

M.C.L.A. 600.2952(2). Of course, in the typical context, a sender of this letter is a private payee, not constrained by due process requirements. But, even if sent by a government entity, this letter indicates that the failure to pay will result in a hearing – a civil action – before a deprivation occurs.

The Grand Rapids Ordinances cited by the majority track the structure of the Michigan statute. Ordinance No. 348 criminalizes uttering bad checks and provides criminal penalties, akin to M.C.L.A. § 750.131. And, like M.C.L.A. § 600.2952, Ordinance No. 349 provides for non-criminal check collection. According to Ordinance No. 349(c), the "expense of a dishonored check response" constitutes "a debt of that person and is collectable by the Charter Township of Grand Rapids and the County of Kent in the same manner as in the case of an obligation under a contract, expressed or implied." In the event of a failure to pay the expenses of a dishonored check response, "the Charter Township of Grand Rapids or the County of Kent may commence *civil suit* to recover the expenses and any costs allowed by law." Ordinance No. 349(e) (emphasis added). The Grand Rapids Board set the "expense of a dishonored check response" at $25 in a May 6, 1997, Resolution.

Had CEU sent the letter provided in the Michigan statute or something similar to it, I would be inclined to think that no due process violation occurred. I would agree that the check writer voluntarily paid the processing fee and waived his or her right to a civil hearing by choosing to resolve the dispute prior to a civil action. Yet, the letter provided by CEU nowhere indicates that payment is settles civil liability authorized by state law or contract liability created by city

ordinance, or that – more importantly – paying the fee in no way precludes a criminal prosecution. CEU's letter, which appears on the letterhead of the Kent County Sheriff Department, states that:

> Violations of the check law are administered for the Police/Sheriff's Department by [CEU]. Repayment of the check(s) plus the bank fee and government assessment fee is required. Should you have any questions regarding this letter or the amount due, please feel free to call: [phone number].

In fact, under neither the state statute nor the city ordinance are the fines being administered for the "Police/Sherriff's Department." Under the Michigan statute, the violations are being administered for the payees – not the police – by CEU, albeit with County facilitation and County collection of the processing fee. Under the city ordinance, the fines are being administered on behalf of the "Township Supervisor." Ordinance No. 349(e). Repayment of the processing fee is not "required"; it is a civil liability and/or contract obligation that, if not voluntarily paid, must be grounded in a civil action. Finally, the notice states: "FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST." Such a notice can easily mislead a reader into believing that the notice and fee are an alternative to criminal proceedings rather than civil proceedings.

With this background in mind, I turn to the alleged due process violation. Our first question is: Were the plaintiffs deprived of property when they paid the $25 fee to the County? I conclude that they were, because, although they voluntarily paid the money, they were misled about the nature and consequences of their payment. In *Herrada v. City of Detroit*, 275 F.3d 553, 557 (6th Cir. 2001), we held that such a payment could be a deprivation for due process purposes:

> Herrada contends that the City interfered with her property interest by making false and misleading

statements in the citation and overdue notice she received. If these notices failed to comport with the requirements of procedural due process, the City arguably violated Herrada's rights, because she paid her fines only after receiving the notices. We must therefore determine whether the notices that she received were constitutionally sufficient.

Here, the letter from CEU informed the plaintiffs that payment "was required," and the letterhead and portions of the letter imply that paying the fee would stave off prosecution, which is not the case. The letter certainly did not inform the check writers that the fee was a civil liability and that paying it forfeited the right to challenge the fee in a civil proceeding, as the state mandated letter does. In sum, CEU and the County sent out letters that misinform the recipients of the nature and consequences of payment of the $25 fee, and the plaintiffs who paid the fee on that basis were deprived of their property.

Having concluded that plaintiffs have alleged a deprivation, I turn to whether the procedures accompanying that deprivation were insufficient. As the majority notes, the essential elements of due process are notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). The majority concludes the letter provided adequate notice even though it concedes that the letter "did not inform the check writers of the availability of a hearing or the procedure for requesting one," *Maj. Op. at 6*, because the notice provided a phone number for "any questions regarding this letter or the amount due." The majority cites no authority for the proposition that a notice that does not indicate that the recipient has any right to dispute the fee, and in fact states that payment "is required," is sufficient. In our most analogous case, *Herrada v. City of Detroit*, this Court concluded that notice was sufficient because "the citation clearly states that a hearing is available to contest the City's allegation," adding that "the citation and overdue notice *also* provide telephone numbers

to call for more information." *Herrada*, 275 F.3d at 557 (emphasis added). The case cannot be read to indicate that providing a phone number alone is enough. Indeed, in considering the impact of potentially misleading statements, the *Herrada* Court explicitly noted that the statements did not render notice insufficient because they "do not raise doubts about an owner's ability to contest the allegations in a hearing, or about the result of paying the fine and thereby waiving a hearing." *Id*. at 558. In this case, the check writers were never informed of their right to a hearing, the results of paying the fee, or the resulting waiver of a hearing. Further, in addition to not giving notice, the statements which suggest that the fee was related to criminal proceedings affirmatively lead a reader away from the conclusion that check writers may challenge their liability for the processing fee in civil court.

Even if the letter gave proper notice, it cannot be said at this stage of the litigation that plaintiffs had an opportunity to be heard. There are three potential opportunities to be heard in this case: the phone number provided by CEU, a criminal proceeding, or a civil proceeding. There is no indication that a check writer could challenge the fee in a criminal proceeding – at a criminal proceeding, the burden of proof is different and there is an intent element required for criminal conviction that is not required under M.C.L.A. 600.2952 for collection of the fee. The defendants likewise cannot claim that these plaintiffs could have contested the fee in a civil proceeding, because the letter certainly did not give notice that such a thing existed. That leaves the phone number. We simply do not know whether it is true that a check writer who calls this phone number can dispute the fee. This case comes to us on Rule 12(b)(6) motion. All that is in the record is the complaint and the letter sent by CEU, attached to the complaint. Thus, we know that the plaintiffs allege in their complaint that the County does not provide an opportunity to be heard and that the letter sent by CEU includes a phone number. We do not know what happens when a check writer calls this phone number. We do not know whether the other

side of the line provides a procedure for challenging the bad check determination, a computerized menu, or a perpetual busy signal.

Due process is a flexible context. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Procedure may not have to be elaborate in a case like this where the property interest is small, but there has to be *some* kind of notice and *some* kind of hearing. For purposes of Rule 12(b)(6), the plaintiffs have sufficiently alleged a due process violation.

I am not unmindful of the majority's concerns for the added administrative costs of "[r]equiring the County to implement additional procedures." *Maj. Op. at 7*. Yet, I believe that the due process concerns could be alleviated by using the text of the letter in the Michigan statute. Using a clear and informative letter instead of a misleading and/or false one would be of little cost to the County. Payments made in response to a proper letter would not be deprivations. Check writers who choose not to voluntarily pay would have notice and a right to be heard in civil court. The County has no legitimate interest in maintaining the text of a misleading letter.

I cannot say that plaintiffs have failed to state a claim, and I therefore respectfully dissent.