Elias PEROCIER–MORALES,
Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil No. 11–1811 (DRD).

United States District Court,
D. Puerto Rico.

Aug. 20, 2012.

400

Elias Perocier–Morales, Butner, NC, pro se.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Respondent.

### AMENDED OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Petitioner Elias Perocier–Morales was working as an on-duty San Juan Municipal Police Department officer on July 20, 2003. In the early morning hours, Petitioner responded to a report over the police radio that an individual, subsequently identified as José Antonio Rivera Robles, had injured a fellow police officer and stolen the officer's police vehicle. Other officers had located Rivera Robles at a gasoline station and were arresting him when Petitioner arrived on the scene. While Rivera Robles was lying face down on the ground and was in the process of being handcuffed, Petitioner, and other officers, kicked Rivera Robles both before and after he was actually handcuffed. At some point, after handcuffing Rivera Robles, Petitioner demanded that Rivera Robles tell him where he left the stolen police car and punched Rivera Robles in the face several times. Rivera Robles did not perform any action towards Petitioner, or any other officer, at the time he was beaten that could be described as aggressive at the gasoline station.

Petitioner later escorted Rivera Robles to the police station. While outside the station, Petitioner noticed that Rivera Robles appeared unconscious and again kicked Rivera Robles. Petitioner and other officers then carried Rivera Robles into the police station and laid him down on the ground.[1] As found by the jury, Rivera Robles died a few minutes later as a result of the kicks and punches he sustained from Petitioner and the other officers.

On June 8, 2009, Petitioner reached a plea agreement with the Government (08–cr–246, Docket No. 229) pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure (a "C type" plea).[2] Under the plea agreement, Petitioner would pled guilty to Count One of the Indictment, aiding and abetting his fellow officers in the deprivation of civil rights under color of law in violation 18 U.S.C. §§ 242 and 2, become a cooperating government witness, and would be sentenced to 120 months imprisonment. Accordingly, Petitioner pled guilty on June 9, 2009 (08–cr–246, Docket No. 234) and was sentenced under the plea agreement on December 21, 2009 (08–cr–246, Docket No. 434).[3]

## I. Procedural History

Pending before the Court is Petitioner Elias Perocier–Morales's writ of habeas corpus under 28 U.S.C. § 2255 filed on August 18, 2011 (Docket No. 3). Therein, Petitioner concedes that the instant habeas corpus petition is time barred, but argues that the statute of limitations should be tolled in light of extraordinary circumstances. Petitioner claims that he was afraid for his life as he was a police officer incarcerated for civil rights violations. Petitioner states that:

> he was afraid to talk to anyone about his case due the susceptibility to abuse in prison he faced [were] any prisoners to find out that he a former police officer for Puerto Rico, let alone that he was convicted for civil rights violations while in pursuit of a criminal suspect. Petitioner was afraid to go to the jail law library and discuss his case there with inmate law clerks because they too would spread the word of his prior crime

---

1. At the plea colloquy, the Government stated that Petitioner punched Rivera Robles while he was handcuffed at the gas station and that Petitioner kicked Rivera Robles at the police station while Rivera Robles appeared to be unconscious (08–cr–246, Docket No. 564, pages 27–28). Petitioner agreed to the Government's presentation of the facts (08–cr–246, Docket No. 564, page 29).

2. A C type plea agreement is a plea agreement whereby the district court has no discretion to modify or alter the terms of a plea agreement and must completely accept or reject the terms of the plea agreement. *See United States v. Mukai,* 26 F.3d 953, 956 (9th Cir. 1994) ("If the Court did not find the terms [of the agreement] appropriate, its only option was to reject the agreement in its entirety."); *United States v. Gilchrist,* 130 F.3d 1131, 1134 (3d Cir.1997) ("An 11(e)(1)(C) plea agreement, once accepted, binds the district court notwithstanding departures from the applica-

ble guidelines"); *United States v. Veri,* 108 F.3d 1311, 1315 (10th Cir.1997) ("If a sentencing court accepts a Rule 11(e)(1)(C) agreement, it is bound by the agreement and may not modify it. . . ."). Should the Court not accept the plea agreement, the Court must allow the defendant the opportunity to change his plea to not guilty. *See* 5 Wayne R. LaFave et al., Criminal Procedure § 21.4(g) (1999) (recognizing that if district court imposes sentence higher than that contemplated in C type plea agreement, defendant must be given opportunity to withdraw plea).

3. The four other co-defendants did not enter a plea agreement and thus proceeded to trial. On August 13, 2009, the jury returned a guilty verdict as to all defendants, although two defendants were acquitted on two counts (08–cr–246, Docket Nos. 378–381). Ultimately, these defendants' sentences ranged from 57 months to 200 months.

and of the fact that he was a former police officer.

(Docket No. 3-1, page 5). Petitioner also advances that his fear is justified as police officers are a unique category of inmates that are extremely vulnerable to serious assaults, and even death, by fellow prisoners. Petitioner further asserts that he was unaware of the one year statute of limitations. Petitioner finally avers that once the drafter of his petition learned of facts surrounding Petitioner's incarceration, on July 19, 2011, Petitioner and his drafter worked diligently to submit the habeas petition to the Court.

Additionally, Petitioner posits that his attorney, Richard Dansoh, provided ineffective assistance of counsel. Petitioner avers that Attorney Dansoh did not attempt to negotiate a favorable plea nor did he investigate all of options available to Petitioner before allowing him to plea guilty. Petitioner also states that the C type plea prevented Attorney Dansoh from arguing for a downward departure at sentencing. Petitioner claims that he never would have accepted a C type plea, and would have instead proceeded with an open plea, if he had been fully apprised of other options that may have potentially resulted in a more favorable sentence.[4]

Finally, Petitioner asserts that while he was honest and forthright with federal agents and the U.S. Attorneys' Office in 2008 in relation to the incident on July 20, 2003, Petitioner admits that he lied to Puerto Rico Police Division's Criminal Investigation Corps when they investigate the facts of the case in 2003. Nevertheless, Petitioner argues that his attorney should have objected to the Government's inclusion of a two-level enhancement for obstruction of justice.

On November 14, 2011, the Government opposed Petitioner's § 2255 motion (Docket No. 6) and solely focused its objections on the timeliness of the petition. The Government states that as judgment was entered on December 29, 2009 (08-cr-246, Docket No. 435), Petitioner's conviction became final, that is unappealable, on January 12, 2010. Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides one year from the date that a prisoner's conviction becomes final for said prisoner to seek habeas relief, the Government asserts that Petitioner had until January 12, 2011 to timely commence this instant suit. However, Petitioner instead waited an additional two hundred and five (205) days to bring the instant action.

The Government also posits that Petitioner's fear of retribution because he was a police officer imprisoned for civil rights violations to be insufficient to support equitable tolling. Further, the Government advances that Petitioner has failed to diligently pursue his rights and that there were no extraordinary circumstances that prevented him from timely filing his habeas petition. Lastly, the Government argues that Petitioner's ignorance of the law is not a defense.

On April 23, 2012, the Court directed the Clerk of the Court to refer the instant matter to Magistrate Judge Justo Arenas for his *Report and Recommendation* (Docket No. 12).

On April 27, 2012, Magistrate Judge Arenas submitted a *Report and Recommendation* to the Court (Docket No. 14). The Magistrate Judge determined that the instant habeas petition is clearly filed after the one year statute of limitations period

---

4. The Court clearly expressed to defendant the nature of the plea agreement. The Court stated that it could either accept or reject the plea, but was prohibited from imposing a sentence that greater than or less than what the parties agreed. *See* discussion infra at pages 407–08.

established in the AEDPA from the date that Petitioner's sentence because final and unappealable. Magistrate Judge Arenas also concluded that Petitioner failed to identify any circumstances that would fall into an exception to the limitations period and thus allow Petitioner to obtain the benefits of equitable tolling. Nevertheless, the Magistrate Judge addressed Petitioner's claim squarely on the merits. Magistrate Judge Arenas stated:

> This was a negotiated plea agreement. The plea agreement was exactly what was negotiated and petitioner, an obviously intelligent and educated person, was informed of his alternatives if the court rejected the same. Ultimately, petitioner received the sentenced bargained for.... There is no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have done something else, such as proceeding to trial, or standing fast for a more favorable plea offer, or entering a straight plea.

(Docket No. 14, pages 408–09). Hence, Magistrate Judge Arenas ascertained that Petitioner failed to demonstrate that Attorney Dansoh was ineffective and thus recommended that Petitioner's § 2255 mo-

tion be denied without an evidentiary hearing.

On May 18, 2012, Petitioner timely submitted his objections to the *Report and Recommendation* (Docket No. 17).[5] Petitioner objects to the Magistrate's rendition of the factual and procedural background and augments the information provided.[6] Petitioner also notes that his co-defendants' sentences ranged from 57 months to 200 months. Petitioner further restates his argument that equitable tolling applies on account of the continuous duress he faces as an incarcerated former police officer. Petitioner argues that duress is an extraordinary circumstance that triggers tolling. Petitioner similarly advances that "the magistrate judge should have recognized that tolling the statute of limitations on the basis of duress, (fear, threats, etc.), even without an explicit threat directed at preventing the filing of the § 2255 petition is acceptable." (Docket No. 17, pages 10–11).

Petitioner also posits that he endured ineffective assistance of counsel at the plea hearing and during plea negotiations due to the C Type plea. Petitioner additionally claims that he received ineffective assistance of counsel at sentencing due to the disparities between similarly situated defendants. On these twin claims of ineffective assistance of counsel, Petitioner states:

---

**5.** Petitioner submitted his objections to prison officials on May 18, 2012 and the Court received the mailing on May 24, 2012. For purposes of complying with applicable fourteen day period for objecting to the Magistrate's *Report and Recommendation*, the date Petitioner submitted his objections to the prison officials is the effective filing date for statute of limitations purposes. Fed.R.Civ.P. 72(b)(2); *see Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir.2002) ("So long as the prisoner complies with the prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute

of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities."). Thus, Petitioner's objections, filed on May 18, 2012, are timely. Accordingly, the Court hereby enters an *Amended Opinion and Order* incorporating, addressing and analyzing Petitioner's objections to the Magistrate Judge's *Report and Recommendation*.

**6.** The Court has herein restated the relevant factual procedural background to resolve Petitioner's concerns on this point.

[C]ounsel was ineffective by impulsively negotiating a 'Type C' plea agreement, thereby prejudicing [Petitioner] by disallowing any opportunity to object or argue, later, under 18 U.S.C. § 3553(a).... Petitioner's counsel unnecessarily limited the available sentencing possibility by negotiating a fixed 120–month sentence.... [T]he sentences for all six, similarly-situated defendants ranged from 57 months to 200 months (including both guilty pleas and trial convictions). Despite the plea agreements being 'the result of extensive negotiations which also included participation of Petitioner's father,' and despite purportedly explaining the sentencing guidelines but never mentioning that the 'advisory guidelines then pointed to a range of 188–235 months,' Counsel had no idea that the court would later exercise its discretion to impose a sentence lower than Petitioner's purported guideline range for those co-defendants who did not plead guilty. Such a result led to the co-defendants who went to trial receiving higher, lower and even the same sentence as imposed on Petitioner.

Counsel's unawareness of the sentences of Petitioner's co-defendants at the time counsel made the tactical choice to seek a 'Type–C' plea, fixing Petitioner's sentence at 120 months, clearly 'fell below an objective standard of reasonableness,' under *Strickland* ....

In sum, because counsel altogether overlooked a possible opportunity to wait and seek a sentence which was less than the sentence imposed on the co-defendants who went to trial, it would seem more prudent for this court to hold a hearing to develop counsel's actual explanation for his failures at negotiating the plea.

(Docket No. 17, pages 15–17).

The Government has not opposed the Magistrate Judge's *Report and Recommendation*.

## II. Referring Dispositive Motions to a U.S. Magistrate Judge

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R. CIV. P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico; *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections within fourteen (14) days after being served a copy thereof. *See* Local Rule 72(d); FED. R. CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (2009), in pertinent part, provides that:

[w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(emphasis added).

"Absent objection ... [a] district court has a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st

Cir.1992); *see also Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *see also Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *see also Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a de novo review of an argument never raised"); *see also United States v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *see also Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

In the instant case, Petitioner has filed several objections to the Magistrate Judge's *Report and Recommendation* (Docket Nos. 17). Thus, the Court reviews the portions of the *Report and Recommendation* to which objections were made *de novo* and reviews all other unobjected-to portions only for plain error.

### III.   Analysis

■ We first examine Petitioner's objections to the Magistrate's *Report and Recommendation,* which, as stated above, we review *de novo;* for any unopposed portions, this Court needs only ascertain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. After a careful analysis, the Court agrees with the Magistrate Judge's conclusions upon a *de novo* review as to the objected-to portions of the *Report and Recommendation* and finds no "plain error" as to any unobjected-to portions. Thus, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Mag-

istrate's *Report and Recommendation* (Docket No. 11) to the instant *Opinion and Order.* The Court briefly explains below.

Petitioner concedes that the instant application for habeas corpus relief was filed after the time period prescribed by the AEDPA; however, Petitioner argues that the doctrine of equitable tolling should apply. In 2010, the U.S. Supreme Court held in *Holland v. Florida* that the statute of limitations period under a similar AEDPA provision, 28 U.S.C. § 2244(d), applicable to federal habeas petitions filed by prisoners in state custody, is subject to equitable tolling under certain circumstances. *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Following the *Holland* decision as well as ten other circuit courts of appeals, the First Circuit recently held that the "one-year limitations period [in § 2255 cases] is subject to equitable tolling in appropriate instances." *Ramos–Martinez v. United States,* 638 F.3d 315, 322 (1st Cir.2011).

■ To gain the benefit of the equitable tolling doctrine, the petitioner must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland,* 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)); *see Trapp v. Spencer,* 479 F.3d 53, 61 (1st Cir.2007) (listing additional factors that may influence whether or not to grant equitable tolling).

■ The Court is in complete agreement with the Magistrate Judge, upon conducting our own *de novo* review, that Petitioner's three explanations for his delay in filing the instant habeas corpus proceeding fails to meet the threshold under this standard. Petitioner is unable to demonstrate that he employed reasonable diligence in seeking habeas corpus relief or otherwise

timely preserved his habeas corpus rights; Petitioner's fear of retribution by other prisoners due to his status as a former police officer imprisoned for civil rights abuses does not constitute extraordinary circumstance that trigger equitable tolling; nor does Petitioner's self-professed ignorance of the law, the statute of limitation, afford him the benefits of the equitable tolling doctrine. Binding First Circuit precedent holds that "that equitable tolling is available only in cases in which circumstances beyond the litigant's control have prevented [him] from promptly filing." *Ramos–Martínez*, 638 F.3d at 322 (1st Cir. 2011) (internal citations and quotations omitted); *see also Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir.2004) ("To preserve the usefulness of statutes of limitations as rules of law, equitable tolling should be invoked only 'sparingly.'") (quoting *Irwin v. Dep't of Vet. Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). The Court concurs with the Magistrate, again upon conducting our own *de novo* review, that nothing beyond Petitioner's own initiative prevented him from timely seek habeas corpus relief.

■ Yet, even setting aside the untimeliness of the instant petition, Petitioner fails on the merits as he can not demonstrate that his counsel's performance fell below an objective standard of reasonableness; nor can Petitioner demonstrate that but for counsel's alleged errors, Petitioner would have elected to wait for a better plea agreement or proceeded to trial. Thus, Petitioner fails to satisfy the applicable *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[7]

What Petitioner fails to realize is that Petitioner's counsel, Attorney Dansoh, negotiated a very advantageous plea deal for Petitioner. As Magistrate Judge Arenas aptly stated, "Petitioner oddly overlooks the fact that his attorney negotiated a favorable plea agreement with the government in a horrible case based upon heinous acts of police officers no less, and if one considers what sentence he might have received after trial or after a straight plea, petitioner could have faced a much longer sentence." (Docket No. 14, pages 409–10). The 120 months sentence that Attorney Dansoh negotiated for, and Petitioner was ultimately sentenced to, seems to be a positive outcome for Petitioner when viewed in relation to the advisory sentencing guidelines suggesting of an imprisonment range of 188 to 235 months. Petitioner loses sight of this plain truth.

Although Attorney Dansoh was prevented from arguing for a downward departure

---

**7.** Under the *Strickland* test, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052); *see Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir.1994); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir.1993); *López–Nieves v. United States*, 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). There is no doubt that *Strickland* also applies to representation out-side of the trial setting, which would include plea bargains, sentence and appeal. *See Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States*, 961 F.2d 17, 20–22 (1st Cir. 1992); *United States v. Tajeddini*, 945 F.2d 458, 468–69 (1st Cir.1991)(abrogated on other grounds by *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)); *cf. Panzardi–Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir.1989); *López–Torres v. United States*, 876 F.2d 4, 5 (1st Cir.1989) (abrogated on other grounds by *Bonneau v. United States*, 961 F.2d 17 (1st Cir.1992)).

at sentencing due to the C Type plea, Petitioner was well aware of this limitation in the plea agreement. During the plea colloquy, the Court repeatedly explained that if the Court accepted the plea, the Court would have no discretion to sentence the Petitioner to a day higher or lower than what was agreed to in the plea. (08–cr–246, Docket No. 564, pages 12–13, 16, 22). Additionally, Petitioner stated in open court that he understood nature of the C Type plea.[8] (08–cr–246, Docket No. 564, page 22). Simply, Petitioner received the benefit of what he bargained for—a 120–month sentence.[9] Part of the nature of a C Type plea, part of what the United States and Petitioner bargained for in their plea agreement, was a firm, take-it-or-leave-it arrangement. Counsel did not "unnecessarily limit[ ] the available sentencing possibilities by negotiating a fixed 120–month sentence;" counsel instead negotiated a very favorable 120–month sentence whereby the Court lacked discretion to alter the agreed upon term. Although Attorney Dansoh was prohibited from arguing for a downward departure at sentencing due the nature of the C Type plea, this limitation was part of what the parties and negotiated for and agreed upon; this restriction fails to constitute ineffective assistance of counsel as we must be mindful of our obligation to give the lawyer the benefit of the doubt. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").[10]

The Court agrees with the Magistrate, upon undertaking our independent *de novo* analysis, that based on these clear assertions in open court, Petitioner may not now partially retract those averments when they are convenient to him. *See United States v. Parrilla–Tirado,* 22 F.3d 368, 373 (1st Cir.1994) ("It is the policy of the law to hold litigants to their assurances .... 'we will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.' ") (quoting *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)).

Petitioner's alternative ground for ineffective assistance of counsel is the purported sentencing disparities between Petitioner and the other co-defendants involved in the same conduct. Petitioner rightly points out that district courts must consider at sentencing "the need to avoid unwarranted sentence disparities among defen-

---

**8.** The Court stated:

> Now, again, I'm going to explain to you for the last time what a C plea is. A C plea is one plea, where the Court's hands are tied. I can only make one decision, either I accept or I reject.
> If I accept, you're going to be sentenced to ten years. I cannot go up one day or down one day. It's ten years.... And if I accept the plea, it's a ten-year sentence; do you understand that?

(08–cr–246, Docket No. 564, page 22). Petitioner answered "Yes, sir." *Id.*

**9.** As the Magistrate Judge stated: "[u]ltimately, petitioner received the sentenced [he] bargained for ...." as Petitioner entered into a plea agreement to serve 120 months imprisonment and the Court sentenced Petitioner accordingly to 120 months (Docket No. 14, pages 408–09).

**10.** The Court notes that the plea agreement states that "[t]he defendant represents to the Court to be satisfied with counsel, Richard O. Dansoh, Esq. and indicates that counsel has rendered effective legal assistance." (Docket No. 232, page 5).

The Court also notes that Petitioner stated during the plea colloquy that he was "quite satisfied" with the services, representation and advice Attorney Dansoh provided him. (08–cr–246, Docket No. 564, page 5). The Court further notes that Attorney Dansoh stated, and Petitioner agreed, that Attorney Dansoh and Petitioner met approximately ten times regarding the plea agreement. (08–cr–246, Docket No. 564, page 8).

dants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, Petitioner is *not* similarly situated as to the co-defendants who proceeded to trial as Petitioner knowingly and voluntarily accepted and entered into a plea agreement.[11] *See United States v. Mitchell*, 421 Fed.Appx. 102, 105–106 (2d Cir.2011) ("defendants were not similarly situated to the co-conspirators they identify, since those defendants who pled guilty did so pursuant to plea agreements which dramatically reduced their Guidelines exposure"); *United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir.2008) (per curiam) (holding that the defendant was not similarly situated to a co-conspirator for purposes of 18 U.S.C. § 3553(a)(6) because the co-conspirator had pleaded guilty pursuant to a written plea agreement, and his sentence reflected the substantial assistance he provided to the government by testifying against the defendant); *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir.2009) ("defendants who cooperate with the government and enter a written plea agreement

are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial."); *United States v. Abu Ali*, 528 F.3d 210, 263 (4th Cir.2008) ("Abu Ali and Lindh are not similarly situated defendants under § 3553(a)(6) in the sense that Lindh, unlike Abu Ali, was sentenced pursuant to a plea agreement with the government."); *id.* at 264 ("a downward deviation based primarily on the comparison of a defendant who went to trial with those who entered plea agreements is a misapplication of § 3553(a)(6)"); *United States v. Gallegos*, 129 F.3d 1140, 1144 (10th Cir.1997) (a disparity among co-defendants is justified "when sentences are dissimilar because of a plea bargain."). "This was because we viewed the comparison of such defendants, even if co-defendants, to be like 'comparing apples and oranges.'" (citing *United States v. Perez–Pena*, 453 F.3d 236, 243 (4th Cir.2006)). The above cited case law makes clear that Petitioner is not similarly situated as to the other co-defendants who proceeded to trial on account of Petitioner's plea agreement.[12]

---

**11.** Petitioner is also not similarly situated as to the other co-defendants because Petitioner was identified as being the most aggressive of all the co-defendants. Based upon the Government's presentation of the facts at the plea colloquy, which Petitioner agreed to, (08–cr–246, Docket No. 564, pages 27–29), Petitioner kicked Rivera Robles twice and punched him two to three times. No other co-defendant was accused of or convicted of kicking or punching Rivera Robles as many times.

**12.** Even were the Court to engage in the § 3553(a)(6) comparison that Petitioner urges, this analysis would not result in a finding of ineffective assistance of counsel. At the time Attorney Dansoh recommended the plea to Petitioner and the Court, counsel could not have foreseen the result of those co-defendants who elected to proceed to trial. Thus, counsel's recommendation was reasonable and prudent based on the information then available. *See Premo v. Moore*, U.S., — U.S. ——, 131 S.Ct. 733, 741, 178 L.Ed.2d

649 (2011) (explaining that "strict adherence to the Strickland standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage.... In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency *in light of information then available to counsel*.") (emphasis added). Hence, "a reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." *Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir.2002); *see United States v. Rodriguez*, 675 F.3d 48, 56 (1st Cir.2012) ("'Judicial scrutiny of counsel's performance must be highly deferential' to avoid 'the distorting effects of hindsight' and allow us 'to evaluate the conduct from counsel's perspective at the time.'")(quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

The Court additionally seeks to clarify two points raised in Petitioner's brief. First, contrary to Petitioner's assertion, the Court was aware of Petitioner's three tour of military service serving in Kuwait, Iraq and Afghanistan, although the Court had no discretion under the C type plea agreement to raise or lower Petitioner's sentence based upon his military service. (08–cr–246, Docket No. 564, pages 4, 10 and 14). Second, Petitioner states that the "forensic results from the medical examiner revealed that [Rivera Robles] died of a 'cocaine overdose.'" (Docket No. 3–1, page 3). The Court reminds Petitioner that two juries, one in Petitioner's codefendants' criminal trial and another jury in the subsequent civil litigation, explicitly rejected that theory and found that Rivera Robles' cause of death was the blunt force trauma inflicted upon him by the police officers.

Finally, the Court finds that the instant matter does not necessitate the need to hold an evidentiary hearing as the pending habeas corpus petition is clearly time barred and unable to be resurrected under the doctrine of equitable tolling. Hence, it is apparent from the briefing and the facts of pending controversy that Petitioner is not entitled to the requested relief of vacating, setting aside, or correcting his sentence under § 2255. *See United States v. LaBonte,* 70 F.3d 1396, 1412–1413 (1st Cir. 1995) ("A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rheto-

ric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief").

## IV. Conclusion

For the reasons stated above, the Court reaches the same conclusion as Magistrate Judge Arenas as to the objected-to portions of the *Report and Recommendation* (Docket No. 14) upon conducting our own, independent *de novo* review; the Court also determines that the *Report and Recommendation* contains an apt and thoughtful analysis that is devoid of plain error as to the remaining unobjected-to portions.[13] Consequently, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 14) to the instant *Opinion and Order.*

Petitioner's motion under 28 U.S.C. § 2255 is hereby **DENIED** without the need for an evidentiary hearing as the Court has concluded that (1) the instant matter is irrevocably time barred under the AEDPA; and that (2) Petitioner does not satisfy the applicable *Strickland* test for ineffective assistance of counsel as Petitioner knowingly entered into a binding C Type plea agreement following ample discussion and warnings as to the consequences of doing so. Further, the Court determines that Petitioner is not similarly situated as to the co-defendants who proceeded to trial pursuant to 18 U.S.C. § 3553(a)(6) due to his validly entered into plea agreement and because his conduct at

---

**13.** The Court greatly appreciates Magistrate Judge Arenas' particularly thorough and stellar *Report and Recommendation.* Accordingly, the Court need not go further "[w]here, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993).

the gasoline station and at the police station was more aggressive than the other codefendants. The Court also denies a certificate of appealability in the instant matter. An *Amended Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

*MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION*

JUSTO ARENAS, United States Magistrate Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2008, petitioner Elias Perocier–Morales, a then police officer in the San Juan Municipal Police Department, and five other police officers, were charged in a seventeen-count indictment with acting under color of law, and aiding and abetting each other, in that they did kick, punch, and otherwise assault Jose Antonio Rivera Robles, resulting in bodily injury to and the death of Jose Antonio Rivera Robles, and thereby did wilfully deprive him of the rights secured and protected by the Constitution of the United States to be free from the use of unreasonable force by one acting under color of law. All in violation of Title 18, United States Code, Section 242. (Criminal 08–0246(DRD), Docket No. 3.) Count Two charges petitioner with the substantive offense alone. Count Fourteen charges petitioner in engaging in misleading conduct toward Police of Puerto Rico Homicide Investigator Rufino Davila, with the intent to prevent communication to a law enforcement officer of the United States of information relating to the commission of a federal offense, namely, Deprivation of Rights Under Color of Law, as charged in Count One and Count Two of the indictment. The Grand Jury made a special finding that petitioner intentionally participated in an act, participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Jose Antonio Rivera Robles died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)); that he intentionally and specifically engaged in an act of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constitutes a reckless disregard for human life, and Jose Antonio Rivera Robles died as a direct result of the act [1] (18 U.S.C. § 3591(a)(2)(D)); committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim (18 U.S.C. § 3592(c)(6). (Criminal 08–0246(DRD), Docket No. 3 at 15–16)).

Petitioner appeared before me on July 8, 2008 for initial appearance and arraignment and was released on bond. (Criminal 08–0246(DRD), Docket Nos. 13, 14). Eleven months later, on June 8, 2009, petitioner announced that a plea agreement had been reached with the government, represented by trial attorneys from the United States Department of Justice Criminal Section, Civil Rights Division in Washington, D.C.[2] (Criminal 08–0246(DRD), Docket No. 229). He was then willing to become a government witness. Petitioner entered a guilty plea the following day. (Criminal 08–0246(DRD), Docket No. 234).

The jury trial began on June 10, 2009 as to four defendants since another police

---

**1.** His death occurred on the date of the incident, July 20, 2003.

**2.** The plea agreement was made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Petitioner agreed to enter a plea as to Count One of the indictment.

officer entered a guilty plea. (Criminal 01–0640(DRD), Docket Nos. 236, 245). Verdicts of guilty were returned on August 13, 2009 except for two acquittals in two counts for two defendants. (Criminal 08–0246(DRD), Docket No. 378–381). As a result of the plea agreement, petitioner was sentenced on December 21, 2009 to 120 months imprisonment. (Criminal 08–0246(DRD), Docket No. 434). Consistent with the terms of his plea agreement, petitioner did not file a notice of appeal. The other defendants' sentences ranged from 57 to 200 months.

This matter is before the court on motion filed by petitioner on August 18, 2011 to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 3.) The government filed a response in opposition to the motion on November 14, 2011. (Docket No. 6.) Petitioner announced that he would file a reply but did not. (Docket No. 7.)

Having considered the arguments of the parties and for the reasons set forth below, I recommend that the petitioner's motion to vacate sentence be DENIED.

Before addressing the substance of his motion, petitioner notes that the applicable one year limitations period for Section 2255 motions should be equitably tolled and his petition should not be considered time barred. He than argues that his attorney, Richard O. Dansoh, provided him ineffective assistance at both the plea and sentencing hearings, particularly in failing to object to a 2–level obstruction enhancement.

## II. LIMITATIONS PERIOD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") instituted a limitations period of one year from the date on which a prisoner's conviction became final within which to seek federal habeas relief. 28 U.S.C. § 2255(f). The current petition was clearly filed over a year from the date

petitioner's sentence became final and unappealable. However, the inquiry does not necessarily stop there. In its pertinent part, section 2255 reads:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255, ¶ 6.

■ Not mentioned in this statute, equitable tolling is a doctrine that "provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" *Ramos–Martinez v. United States*, 638 F.3d 315, 321 (1st Cir.2011), citing *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004) (quoting *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir.2003)). Petitioner goes to great lengths relating various factors to toll the statute but ultimately does not describe any circumstances that fall within any of the exceptions which would equitably toll the limitations period of the statute. *See e.g. Ramos–Martinez v. United States*, 638 F.3d at 321–24. To carry the burden of establishing the basis for equita-

ble tolling, the petitioner must show " ' "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.' " *Id.* at 323, quoting *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010), which in turn quotes *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *see Lattimore v. Dubois,* 311 F.3d 46, 55 (1st Cir.2002); *Trenkler v. United States,* 268 F.3d 16, 25 (1st Cir.2001); *Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir.2001).

There are no extraordinary circumstances present which support a favorable invocation of petitioner's entitlement to equitable relief. Petitioner relates his general fear of talking to anyone or of being found out as a former policeman as well as being a civil rights violator. He was afraid of going to the jail law library and talking about his case with "inmate law clerks" because they would spread the word about of his prior crime. Petitioner is aware that in the federal and in the insular prison systems, there are vulnerable categories of prisoners, such as cooperators, sex offenders, former police officers or prison guards, and rapists. Susceptibility to abuse of these categories is detailed by petitioner even where he is housed in Butner FCI(Low), which is apparently low security, in an institution which has low, medium, and high security classifications. He wishes an evidentiary hearing to bring forth this type of evidence. At prison, he finally met someone whom he decided to trust and who helped him write this motion, or wrote it for him. In this manner he also became aware of the one year limitations period for seeking collateral review of his sentence. The ghost writer for this petition first became aware of petitioner's legal rights on July 19, 2011. (Docket No. 3–1 at 6). Petitioner notes that he had an extreme fear and genuinely feared for his life.

Over 500 days passed by from the date his conviction became final, but the record reflects only ethereal reasons for untimely filing. There is no showing of reasonable or due diligence on the part of the petitioner in seeking relief. *See Barreto–Barreto v. United States,* 551 F.3d 95, 101 (1st Cir.2008); *Cordle v. Guarino,* 428 F.3d 46, 48–49 (1st Cir.2005). The general fear of other prisoners because of his status is not an extraordinary circumstance to trigger tolling. *See e.g. Pahlavi v. Palandjian,* 809 F.2d 938, 942–43 (1st Cir.1987); *Kerchee v. Jones,* 428 Fed.Appx. 851, 858 (10th Cir.2011). Nor is ignorance of the law, especially by a pro se convict police officer who cannot have attributed to him a naivete to which he is not entitled. *See e.g. Melendez–Perez v. United States,* 467 F.Supp.2d 169, 173 (D.P.R.2006).

Petitioner's pleading was filed on August 18, 2011. His sentence was entered on the docket on December 29, 2009. Therefore his conviction became final on January 12, 2010. *See Foxworth v. St. Amand,* 570 F.3d 414, 430 (1st Cir.2009); *Collado v. United States,* 581 F.Supp.2d 282, 285 (D.P.R.2008). Petitioner was required to file his 2255 motion within a year of finality of sentence, that is January 12, 2011. The petition was filed almost seven months too late. His professed reasons for failing to file the motion within the required period are that he was a police officer, had been convicted of civil rights violations, and was afraid of retaliation. Again, such commonplace argument is too airy to weigh within a framework of extraordinary circumstances. One is forced to conclude that petitioner's claim is time-barred. *See Trenkler v. United States,* 268 F.3d at 24–27. However, the inquiry continues.

Petitioner claims that he suffered ineffective assistance of counsel since his plea was not professionally negotiated and that when his last attorney learned that he had

confessed to all by admitting his full participation to the crime, counsel did not try to get a better agreement. Nor did he investigate further. Petitioner notes that he was afraid and confused and was bootstrapped into a type C plea, foregoing a better plea possibility were it not for the obstruction of justice two-level enhancement, an enhancement which he protests as simply wrong. He argues that his attorney did not explain the alternatives to a Type C plea. Petitioner argues that the judge could have heard substantial mitigating evidence were it not for the type of plea agreement. Petitioner notes that counsel could have stressed petitioner's background in seeking a downward departure. He stresses his three military deployments to war zones,[3] including personal and service awards and recognitions.

On November 14, 2011, the government filed a response in opposition to the petitioner's motion arguing basically that it should be summarily denied because it is untimely. (Docket No. 6). It notes that petitioner has recanted several previously stated facts.[4] Regarding the tolling issue, the government notes that fear of retribution or retaliation is not an extraordinary circumstance which supports tolling. It also notes the common expression that ignorance of the law is no excuse. *See Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir. 2001); *Felder v. Johnson,* 204 F.3d 168, 171–72 (5th Cir.2000). The government does not address the merits of the petition but rests on the argument that the limitations period had well expired when the petition was filed.

Nevertheless, I discuss the merits of the petition. In any event, the petition is definitely time-barred.

Petitioner paints a picture before the court which flies in the face of what he related to the court during the plea colloquy. The plea agreement was the result of extensive negotiation which also included participation of petitioner's father. There were at least ten meetings with petitioner and his attorney to discuss a plea agreement. This was not a down-your-throat plea but rather a negotiated plea, as reflected in the statements made by petitioner under oath at the plea hearing. (Cr. No. 08–0246, Docket No. 564 at 8–9, 11–12.) The court discussed in detail how a Type C plea operates, stressing how it in fact limits the court's discretion in sentencing. The court then explained the Sentencing Guidelines as well as the enhancements, including the obstruction enhancement which petitioner vehemently protests now. (Cr. No. 08–0246, Docket No. 564 at 18–19.) The advisory guidelines then pointed to a range of 188 to 235 months and petitioner understood that then. That is, it would be clear to a reasonable person that accepting a bootstrapped or pigeon-holed 120 month sentence was a good deal at that time although now it is not such a good deal. And at that, petitioner had discussed the agreement with his father, and mother and it was good. (Cr. No. 08–0246, Docket No. 564 at 21–22.)

Petitioner's facts as related in his petition vary from the facts he admitted to at the plea hearing. Kicking and beating the deceased[5] on the one hand is not the same

---

3. Petitioner served in the Puerto Rico National Guard and was deployed to Afghanistan, Kuwait and Iraq. (Cr. 08–246, Docket No. 564 at 4)(Change of Plea Transcript).

4. A reading of the change of plea transcript and the petition reveals two very different

scenarios in terms of petition's being informed by his attorney of the consequences of his plea after sufficient discussion with petitioner. (Cr. 08–246, Docket No. 564 at 5–6)

5. (Cr. No. 08–0246, Docket No. 564 at 29.)

as using "very bad judgment" and striking the now dead man "twice with a closed fist." (Docket No. 3–1 at 3.) These statements are at loggerheads, the first ones made under oath.

At sentencing, the court gave its reasons for keeping to the Type C agreement, agreeing with defense counsel's favorable portrayal of petitioner's life prior to the nefarious incident. (Cr. No. 08–0246, Docket No. 454 at 6–7)(Sentencing Transcript).[6] Without the Type C agreement, just as the court could have considered mitigating circumstances, the court could also have considered aggravating circumstances, and considering the type of case this is, the government would have been unlikely to remain mute during this exchange.

### III. ANALYSIS

■ Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

28 U.S.C. § 2255(a); *Hill v. United States,* 368 U.S. 424, 426–27 n. 3, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998). The burden is on the petitioner to show his or her entitlement to relief under section 2255, *David v. United States,* 134 F.3d at 474, including his or her entitlement to an evidentiary hearing. *Cody v. United States,* 249 F.3d 47, 54 (1st Cir.2001) (quoting *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993)). Petitioner has sought an evidentiary hearing, especially as related to the tolling issue. It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." *United States v. McGill,* 11 F.3d at 226 (quoting *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir.1974)). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are "inherently incredible." ' " *United States v. McGill,* 11 F.3d at 226 (quoting *Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir. 1984)).

### *Ineffective Assistance of Counsel*

"In all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. 6. To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "This inquiry involves a two-part test." *Rosado v. Allen,* 482 F.Supp.2d 94, 101 (D.Mass.2007). "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Id.* (quoting *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052.) "This evaluation of counsel's performance 'demands a fairly tolerant approach.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994)). "The court must apply the

**6.** The judge was clearly aware of petitioner's impressive military record and the three deployments in harm's way.

performance standard 'not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented.'" *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991)). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States,* 94 F.3d 20, 23 (1st Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052). "Second, a defendant must establish that prejudice resulted 'in consequence of counsel's blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." '" *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 8) (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052); *see Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. 2052): *Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994); *López–Nieves v. United States,* 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052); *Mattei–Albizu v. United States,* 699 F.Supp.2d 404, 407 (D.P.R.2010). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Argencourt v. United States,* 78 F.3d at 16 (quoting *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052). Thus, "[c]ounsel's actions are to be judged 'in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law.'" *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 15). The defendant bears

the burden of proof for both elements of the test. *Cirilo–Muñoz v. United States,* 404 F.3d 527, 530 (1st Cir.2005), *cert. denied,* 525 U.S. 942, 119 S.Ct. 363, 142 L.Ed.2d 300 (1998), (citing *Scarpa v. Dubois,* 38 F.3d at 8–9).

In *Hill v. Lockhart* the Supreme Court applied *Strickland's* two-part test to ineffective assistance of counsel claims in the guilty plea context. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. 366. Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366.

This was a negotiated plea agreement. The plea agreement was exactly what was negotiated and petitioner, an obviously intelligent and educated person, was informed of his alternatives if the court rejected the same. Ultimately, petitioner received the sentenced bargained for. Indeed it is clear that the prosecutor did not deviate from the agreed-to recommendation. Petitioner at sentencing, indeed at the change of plea hearing, was well aware of the evidence he was facing, (as well as the reduction and enhancements points), were he have exercised his right to trial. Now he argues that nothing was the way it

appeared to be and nothing happened the way it appeared to happen because of his attorney's poor performance.

There is no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have done something else, such as proceeding to trial, or standing fast for a more favorable plea offer, or entering a straight plea. Indeed, petitioner asks that the court vacate the plea and/or sentence and grant the remedy requested in the motion (Docket No. 3 at 13). I am not at all sure what that means but I would imagine that petitioner would prefer to have the court re-sentence him, unencumbered by the two level obstruction enhancement which he admitted to in 2009 but disavows in 2011. This would entail vacating the Type C plea, pleading guilty to all of the charges, or going to trial and being found guilty, and then allowing him the opportunity to present a sentencing memorandum, and 18 U.S.C. § 3553(a) factors in support of a lesser sentence, that is, less than the 120 months he is serving now. Of course, petitioner could also be acquitted at trial. In the alternative, he seeks an evidentiary hearing in relation to ineffective assistance, and also seeks the appointment of counsel. (Docket No. 3–1 at 16).

■ The statements made by Mr. Dansoh at the plea hearing, all of which petitioner agreed with at the time, belie some incredible ignorance of the entire plea negotiation process, especially with the involvement of petitioner's parents prior to the hearing. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz v. Newsome,* 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *see Nieves–Ramos v. United States,* 430 F.Supp.2d 38, 43 (D.P.R.2006); *Caraballo Terán v. United States,* 975 F.Supp. 129, 134 (D.P.R.1997). Petitioner initialed each page of the plea agreement at the urging of the sentencing judge, and signed it. He was under oath. He understood the sentence recommendation.

Petitioner oddly overlooks the fact that his attorney negotiated a favorable plea agreement with the government in a horrible case based upon heinous acts of police officers no less, and if one considers what sentence he might have received after trial or after a straight plea, petitioner could have faced a much longer sentence. The sentencing judge was very familiar with the case scenarios having presided at the civil action brought by family members [7] as well as the criminal trial. Co-defendants received higher, lower and the same sentence. Petitioner might have received a shorter one, but the numbers as related were against that probability. However, Monday morning quarter-backing and sour grapes are no stranger to the world of federal habeas corpus.

■ In any event, it is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla–Tirado,* 22 F.3d 368, 373 (1st Cir.1994) (quoting *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea collo-

---

7. Civil No. 03–1989(DRD)

quy." *Torres–Quiles v. United States,* 379 F.Supp.2d 241, 248–49 (D.P.R.2005) (citing *United States v. Marrero–Rivera,* 124 F.3d 342, 349 (1st Cir.1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements . . . unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." *United States v. Butt,* 731 F.2d 75, 80 (1st Cir.1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt,* 731 F.2d at 80 (citing *Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975)). Because of the wide range of tactical decisions that a criminal defense attorney may be presented with in any given trial, judicial scrutiny of the attorney's performance must be "highly deferential" and indulge a strong presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight. . . ." *Id.* One challenge counsel faced was that petitioner had basically "come clean" by the time he was contracted by petitioner's family. Nevertheless, he fruitfully engaged in plea negotiations with federal prosecutors from a section of the Civil Rights Division not known for its munificence.

▇ In relation to a motion to vacate sentence, ordinarily the court would have to "take petitioner's factual allegations 'as true,'" however it will not have to do so when like in this case "'they are contradicted by the record . . . and to the extent that they are merely conclusions rather than statements of fact.'" *Otero–Rivera v. United States,* 494 F.2d 900, 902 (1st Cir.1974) (quoting *Domenica v. United States,* 292 F.2d 483, 484 (1st Cir.1961)). On the whole, petitioner's arguments are a series of baseless conclusions founded on *post hoc* gossamer.

It is clear then that the petitioner was adequately represented by his counsel and that his allegations are meritless.

## IV. CONCLUSION

"Under *Strickland v. Washington,* . . . counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States,* 195 F.3d 54, 55 (1st Cir. 1999). Petitioner has not satisfied the first prong of *Strickland.* The arguably inadequate assessment by petitioner's attorney in relation to the plea and sentence did not contribute to the ultimate outcome of the criminal case. There were no errors of defense counsel that resulted in a violation of petitioner's right to adequate representation of counsel under the Sixth Amendment.

In view of the above, I find that petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). Furthermore, even if petitioner had succeeded in showing deficiencies in his legal representation, which he definitely has not done, he is unable to establish that said deficiencies resulted in a prejudice against him in the criminal proceedings. *See Moreno–Espada v. United States,* 666 F.3d 60, 65 (1st Cir.2012), citing *Tevlin v. Spencer,* 621 F.3d 59, 66 (1st Cir.2010); *Owens v. United States,* 483 F.3d 48, 63 (1st Cir.2007)

(quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). It is impossible to find that any claimed error has produced " 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States*, 37 F.3d 769, 772 (1st Cir.1994) (quoting *Hill v. United States*, 368 U.S. at 428, 82 S.Ct. 468). Petitioner was sentenced consistent with what he had agreed to after extensive negotiation. *Cf. United States v. Antonakopoulos*, 399 F.3d 68, 77 (1st Cir.2005), citing *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

### III.  CONCLUSION

Federal habeas relief is reserved only for the poorest performances. That is lacking here. I find that petitioner's motion under 2255 is clearly time-barred and that the reasons presented to the court to consider equitable tolling do not trigger a finding of exceptional circumstances. The petition is otherwise meritless as is apparent from a reading of the change of plea and sentencing transcripts and the meticulous manner in which the sentencing judge, clearly aware of petitioner's military record of accomplishments, assured petitioner understood his rights, his satisfaction with legal representation, and the consequences of the Type C plea.

In view of the above, I recommend that petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987).

At San Juan, Puerto Rico, this 27th day of April 2012.